May it please the court, my name is Wayne Young and I represent the defendant Ortega-Amaro. This is the safety valve case, and it's undisputed that he satisfied the first four conditions of the safety valve. He had no criminal history, there's no weapon, no one was injured, and he's not a leader or supervisor. Was that essentially stipulated, too? It was. There was some question, and I briefed it on number four about whether he was a leader or supervisor, but Mr. Biesa's brief is made clear that the government agrees that he satisfied condition four. So the only question is whether he satisfied condition five about making a truthful statement. More specifically, was counsel ineffective in the trial court for withdrawing the safety valve motion? But they had three meetings, and counsel basically at sentencing said, I'm withdrawing my motion. And why can't I read that as simply saying we tried and my client just couldn't give the government what the government thought he had to give them? Because it's not either counsel's decision or even the government's decision. Unlike a 5K motion, which requires the government to make the motion, had counsel raised the motion, it is solely in the discretion of the court. So he would have been able to point out to the court, we had three meetings, he was active in drug trafficking, he disclosed that, there was a statement at sentencing about how much information he had provided. They already knew that. Well, those were the elements of the crime. It came out at change of plea, it came out in the plea agreement. But it is clear from the record that he had provided substantial information to the government in these three meetings. It certainly forms a basis for counsel to argue to the trial court that I've met my initial burden. But that's not what he said. He basically told the judge at sentencing that they tried three times and the only thing that was left at this point was a Rule 35 in the hope that, and the way I read the transcript, in the hope that your client would provide help down the road that would, in essence, allow him to turn the corner and give the government what the government thought he had to give them. Well, that's precisely the ineffective assistance, that having met three times. Ineffective assistance or a client who just won't come to terms with what he's done. I mean, the problem is you can read the record two ways, can't you? Well, I'm not sure, Your Honor. He had had these meetings, he had disclosed his role in the offense. That certainly forms a basis to argue that he meets his initial burden, at least of shifting to the government. But counsel, I'm sure you've had clients that really find it very difficult to tattle on other people. They may be very willing to acknowledge what they did, but what they don't want to do is to finger others. And it looks to me that that's what the problem was here. He just didn't want to tell the government everything he knew, and that's why the three proper sessions were not successful. Well, we don't know that, Your Honor. What we do know is that they had the three proper sessions, and rather than put it in front of the court that had the discretion to at least find that he met his initial burden, counsel simply withdrew it. And so what we're asking for in this case is the opportunity. And did the government counsel say anything? Most of Mr. Villesa's argument had to do with the minor role issue, which was a separate issue. And there had become some overlap. And between the minor role, there's at least a suggestion, particularly in the Court's finding on the 2255 motion, that absent qualifying for a minor role, you don't qualify for the safety valve. And that's not correct. You can qualify for the safety valve without a minor role as long as you're not a leader or supervisor, which it's stipulated that he isn't. So the question comes back to whether he made a truthful statement. Okay. I don't quite follow the declaration where he says that he was complaining that I had attorney Priamo inform me that it was not necessary for me to provide useful information regarding activities of others unknown to me. I would have informed, as AUSA VA said, that I possess no such information. What is he saying there? I think what he's saying, Your Honor, is that he didn't even know that there was a safety valve. He's saying his counsel told him the only way you get a sentence below the mandatory minimum is by way of 5K cooperation. And so he's saying, I wasn't told about the safety valve. And then we're arguing as well that the counsel withdrew the safety valve motion, even though there was some basis for it. All right. We'll hear from the government. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Rob Velez. I represent the United States. I was also government counsel in the proceedings below, including sentencing. The issue that concerns the Court is one that arises from the court judgment of the defendant, not the attorney. At the change of plea, the defendant told the district court that he was the supplier of 18 kilograms of cocaine to co-defendant Kenneth Ellis. He signed a plea agreement, which he confirmed that, in fact, he was the drug supplier. However, it was in the context of the three safety valve meetings and sentencing that the defendant exercised poor judgment. Rather than stand by his previous admissions to the district court, he decided that he was going to change his tune and claim to be a courier instead of being the supplier. And he did so in order to get the minor role reduction. However, by claiming to be the courier instead of being the supplier, the defendant compromised his ability to obtain safety. Now, is this his decision or his counsel's decision? It was his decision, Your Honor, and that is confirmed by the defendant's declaration in his 2255, which is attached to his 2255 at pages 34 to 36 of the excerpt of record, where he confirms and continues to stand by his claim that he was the courier in the offense. And, in fact, in his declaration, he indicates that had his attorney properly advised him, he would have told the government nothing. He would have told the government nothing because he was just a courier. In other words, he was claiming that he didn't have the knowledge. He didn't know anything. He didn't have any knowledge, and that's what he would have told the government. He didn't know anything. And under the fifth condition of the safety valve, it does not satisfy the five requirements of the safety valve. That's the bottom line. There is no basis whatsoever for the defendant to claim that he satisfies safety valve, and no reason at all for the district court to even hold a hearing because the defendant himself says that he's the courier, and then he would have said nothing. All right. He says that in his declaration now that in his plea agreement he agreed that the factual basis was that he was the supplier. How could it be solely his fault that he, you're saying, changed his tune? And wouldn't his lawyer, if he was acting proficiently, have said you can't come in now and change your tune from what you swore to was the factual basis of your plea previously? And that would certainly be a concern for the district court as to whether or not the defense attorney had counseled him that he could not do so if that was his position. However, it's clear from the 2255, this is an opportunity where the defendant can say, look, I was the supplier, but for whatever reason I was misadvised and decided to claim to be the courier. That's not the case. He's saying in his declaration I was the courier. And by doing so, there was nothing left for the district court to decide except for the fact that the overwhelming evidence proved that the defendant was the cocaine supplier. The defendant's plea admissions and his plea agreement proved that he was the supplier. So there was no basis for the court to find that he had satisfied the Fifth Condition. If there's any other concerns for the court, I will submit on that. Thank you very much. Thank you. In response to your question, at the time of sentencing, which is the crucial time, it was counsel who advanced the idea that he was merely a courier. But more importantly, I think that's a – there's no real distinction. He admitted that he was a supplier. He admitted that he delivered it. He's arguing for the minor law. There is a – there's a big distinction between being a delivery man and being the supplier. The delivery man is just the person who physically delivers the goods. And we get these cases all the time, as you know, particularly the border crossing cases, where the courier basically knows nothing other than the fact that he was carrying the goods. And that's what your client was trying to claim or is trying to claim now, whereas, as the government points out during his plea, he admitted that he was the source of supply. He was the guy who was packaging them and the person to whom the customers complained if they didn't like the markings on the packages. That's more than just a simple delivery man. But in his declaration, he did that without benefit of counsel, so perhaps those distinctions were lost on him. But throughout the proceedings, he – Or he's changing his story. I mean, the problem is it's a credibility call, isn't it, for the district court to make? And we're asking – Were you lying then or are you lying now? We're asking for it is for the district court to make that credibility call because counsel withdrew the motion, and he had at least an arguable basis to say, I've met my preliminary burden, and burden shifts to the government to rebut that I qualify for the safety valve, but he never got that far because his counsel withdrew. With that, I'll submit it. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case on the calendar, which is Zun Li v. Mukasey.
judges: Schroeder, Wardlaw, Tallman